IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 10-663-4 |
| | : | |
| JACQUEL CREWS | : | |

**MEMORANDUM**

**Padova, J.**                                                                                                                **January 12, 2012**

Second Superseding Indictment No. 10-663 charges Defendant Jacquel Crews with one count of conspiracy to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base ("crack"), in violation of 21 U.S.C. § 846 (Count Five), and thirteen counts of laundering of monetary instruments in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i) (Counts Eight - Twenty). He is scheduled to be tried on these charges beginning on February 27, 2012. Presently before the Court is Crews's Motion "For Issuance of Subpoenas *Duces Tecum* Pursuant to Fed. R. Crim. P. 17(c)." We held a hearing on the Motion on January 4, 2012. For the reasons stated below, we deny the Motion.

**I.     BACKGROUND**

The Second Superseding Indictment alleges that Crews participated in a multi-million dollar cocaine and crack cocaine distribution association based in the Frankford section of Philadelphia (the "Frankford DTA"), which engaged in the trafficking of hundreds of kilograms of cocaine and crack cocaine in Philadelphia from 1995 through 2007. As part of this conspiracy, Crews allegedly provided money for the purchase of multi-kilogram quantities of cocaine; purchased multi-kilogram quantities of cocaine; received deliveries of cocaine; manufactured crack cocaine for sale; packaged cocaine and crack cocaine; and supplied cocaine and crack cocaine to other individuals for sale. The

Frankford DTA is alleged to have generated millions of dollars in gross receipts and profits from its drug trafficking activities, and the Second Superseding Indictment also charges Crews with laundering those proceeds through the purchase and mortgaging of real estate in Philadelphia.

Crews's Motion concerns two individuals who have been identified as witnesses who will testify against Crews at his trial. The first is Craig Lofton, who is alleged in the Second Superceding Indictment to be another member of the Frankford DTA who participated in the purchase and packaging for resale of kilogram quantities of cocaine. The second individual is James Miller, who is alleged in the Second Superceding Indictment to have purchased cocaine from Crews between 2003 and 2006 and to have sold cocaine to Crews in 2006.

Lofton and Miller were both arrested in October 2006, and have both entered guilty pleas to drug trafficking crimes. Since his 2006 arrest, Lofton has been held in the Federal Detention Center-Philadelphia ("FDC"), the Salem County Correctional Facility, the Berks County Prison, and the Lehigh County Prison. James Miller has been held since his arrest in the FDC, the Salem County Correctional Facility; the Northern Neck Regional Jail, and the Northeast Ohio Correctional Center.

Crews contends that Lofton and Miller have colluded in coercing and coordinating testimony of several other individuals who Crews expects to testify against him at trial. Crews has, accordingly, moved for an order allowing the issuance of subpoenas *duces tecum* addressed to all of the institutions in which Lofton and Miller have been incarcerated since their arrests. Each subpoena seeks the pre-trial production of Lofton's and Miller's recorded phone calls and visitor logs. Together, the subpoenas seek the production of the recordings of every phone call made by Lofton and Miller for over five years, in addition to a listing of every single individual who has visited Lofton and Miller for the same time period.

## II.     LEGAL STANDARD

A subpoena *duces tecum* issued pursuant to Federal Rule of Criminal Procedure 17(c) "may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Fed. R. Crim. P. 17(c)(1). If the court orders that the requested documents be produced prior to trial, the court may also permit the parties to inspect the documents prior to trial. Id. The Supreme Court has recognized that Rule 17(c) is "not intended to provide a means of discovery for criminal cases;" rather, "its chief innovation [is] to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." United States v. Nixon, 418 U.S. 683, 698-99 (1974) (footnote omitted) (citing Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951)). Consequently, Rule 17(c) provides only for the subpoena of documents or other materials that are "'admissible as evidence.'" United States v. Cuthbertson, 630 F.2d 139, 144 (3d Cir. 1980) (quoting Bowman, 341 U.S. at 221). We must therefore "'be careful that [a] Rule 17( c) [subpoena] is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16.'" United States v. Eisenhart, 43 F. App'x 500, 505 (3d Cir. 2002) (alterations in original) (quoting Cuthbertson, 630 F. 2d at 146).

The United States Court of Appeals for the Third Circuit has also cautioned that "[t]he fact that requested material may be evidentiary and subject to subpoena at trial under Bowman does not mean that the party seeking production is automatically entitled to pretrial production and inspection." Cuthbertson, 630 F.2d at 145. In order to obtain documents pursuant to a Rule 17(c) subpoena prior to trial, a defendant must establish the following four elements:

3

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

Nixon, 418 U.S. at 699-700 (footnote omitted) (citing United States v. Iozia, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)). Moreover, while documents to be used for the impeachment of a government witness may be subject to subpoena pursuant to Rule 17(c), they are not ordinarily subject to pre-trial production:

> [R]ule 17(c) permits a party to subpoena materials that may be used for impeaching a witness called by the opposing party, including prior statements of the witness. . . . . However, because such statements ripen into evidentiary material for purposes of impeachment only if and when the witness testifies at trial, impeachment statements, although subject to subpoena under rule 17(c), generally are not subject to production and inspection by the moving party prior to trial.

Cuthbertson, 630 F.2d at 144 (citations omitted).

### III. DISCUSSION

Crews contends that he is entitled to the requested subpoenas because he has information indicating that Lofton and Miller "have been reaching out to individuals who are cooperating in this case, . . . have been coordinating testimony, [and] have been telling people essentially what to say and how to say it." (1/4/12 Hrg. Tr. at 2-3.) He maintains that the material he seeks, phone calls recorded by prisons and prison visitor logs, are not otherwise procurable in advance of trial. (Id. at 4-5.) Crews further asserts that he cannot limit his request to visits by, or calls made to, certain individuals, or even to all of the individuals on the Government's witness list, because Lofton and

4

Miller may have used third-parties to place calls to individuals they sought to influence. (Id. at 6, 10.)

Crews testified during the January 4, 2012 Hearing to lay an evidentiary foundation for his Motion. He stated that his belief that Lofton and Miller are coercing and/or coordinating testimony against him is based on three sources of information: (1) conversations he had with Lofton; (2) conversations he had with two of his co-defendants in this case; and (3) conversations he had with an individual who has placed three-way calls for Lofton since Lofton was incarcerated. Crews reported that, in 2006, Lofton contacted him by way of a three-way call placed by a girl named Tamara. (Id. at 13.) During this telephone conversation, Lofton asked Crews to visit him at the Salem County Correctional Facility. (Id.) When they met, Lofton asked Crews to cooperate with the government against another, unspecified, individual for Lofton's benefit. (Id. at 14-15, 17-19, 28.) Crews declined to do so. (Id. at 15.)

In 2006, Crews spoke to Mark Miller (one of his co-defendants in this case), who was then incarcerated in Fort Dix, New Jersey. (Id. at 19.) Mark Miller told Crews that Lofton and James Miller, who were then incarcerated at the FDC, were reaching out to a man named Johnny Fersachi and possibly another man named Giovanni, in an attempt to convince Fersachi and Giovanni to lie about Crews in connection with a drug indictment. (Id. at 20, 31.) Crews does not have any personal information regarding the basis of Mark Miller's information in this regard and does not know either Johnny Fersachi or Giovanni. (Id. at 30-32.)

On one occasion during 2011, Crews spoke to another co-defendant in this case, Monique Pearson, who informed Crews that Lofton had coerced several people, namely Theodore McFaddden, Jr., Kevin Isely, Timothy Carter, and Mark Miller. (Id. at 23-24.) She also told Crews

5

that Michael Durante had visited Lofton at the Salem County Correctional Facility and the Lehigh County Prison. (Id. at 35.) Crews knows McFadden and Carter but has not had personal dealings with either of them, he has seen Isely with Lofton. (Id. at 37-38.)

In 2007, Crews had a conversation with Lofton's cousin Ryan, who informed Crews that he had placed three-way calls for Lofton with Isely and McFadden, and several other people, and had overheard Lofton asking Kevin Isely to set people up for him and to coerce stories. (Id. at 25-26.) Ryan also told Crews that he was aware that Lofton had contacted James Miller's brother, Joe Miller. (Id. at 26.)

Crews did not identify any specific phone calls or visitor logs he seeks to subpoena for pre-trial production pursuant to Rule 17(c). Rather, he is engaged in a fishing expedition, merely hoping to find material that he may be able to use to impeach the Government's witnesses against him. Indeed, "[r]ather than specifically targeting evidentiary and relevant material, the proposed subpoena[s] appear[] to be an attempt by Defendant[] to unearth a mass of personal communications by potential government witnesses in an attempt to find anything that might impeach their credibility." United States v. Merlino, Crim. A. No. 99–0363, 2001 WL 283165, at *7 (E.D. Pa. Mar. 19, 2001) (denying request for Rule 17(c) subpoena for recordings of prison telephone calls made by three government witnesses on the grounds that the subpoena sought pretrial production of impeachment evidence and defendant was engaged in a fishing expedition). Moreover, Crews is fishing only for material he can use to impeach government witnesses, and that material, which is "not admissible for any evidentiary purpose prior to trial," is not ordinarily subject to pre-trial subpoena under Rule 17. United States v. Tillman, Crim. A. No. 08-254, 2009 WL 3401721, at *1 (W.D. Pa. Oct. 20, 2009) (granting motion to quash Rule 17(c) subpoenas that sought recorded

6

prison telephone calls made by a government witness because "it is clear that defendant seeks these recordings and information for the sole purpose of impeaching the testimony of [the government witnesses]. This information, therefore . . . is not subject to pre-trial disclosure under Rule 17(c)." (citing Merlino, 2001 WL 283165, at *6-7)). Crews clearly has not satisfied his burden of establishing that the materials he seeks "are evidentiary and relevant" and that his Motion "is made in good faith and is not intended as a general 'fishing expedition.'" Nixon, 418 U.S. at 699-700 (footnote omitted).

## IV. CONCLUSION

Crews seeks an order allowing him to review the recordings of more than five years of telephone calls made by two imprisoned government witnesses and more than five years of logs showing each person who has visited these witnesses in prison. He seeks what appears to be a massive amount of material in the hope that his review of this material may uncover the proverbial needle in a haystack, a visit or phone call that he can use to impeach the testimony of these two witnesses and perhaps some other government witnesses. As we have discussed above, impeachment material is not typically the proper subject of pre-trial subpoenas pursuant to Rule 17(c). See Cuthbertson, 630 F.2d at 144. Moreover, "Defendant has made no showing other than a belief or hope that the [materials] contain useful evidence. Defendant is clearly searching for useful information, not seeking to secure specific admissible evidence." United States v. Krall, Crim. A. No. 07-607-01, 2009 WL at 2394288, at *6 (E.D. Pa. Aug. 4, 2009) (granting motion to quash Rule 17(c) subpoenas served on law enforcement officers regarding their communications with a confidential informant). The "mere hope that some exculpatory material might turn up" is not a sufficient basis for the issuance of a subpoena pursuant to Rule 17(c). Cuthbertson, 630 F.3d at 146.

Crews's Motion "For Issuance of Subpoenas *Duces Tecum* Pursuant to Fed. R. Crim. P. 17(c)" is, accordingly, denied. An appropriate Order follows.

BY THE COURT:


　S/ JOHN R. PADOVA　
John R. Padova, J.